VIRGINIA: IN THE CIRCUIT COURT OF THE COUNTY OF CULPEPER

MELODY L. FRAZIER (formerly Melody L. Vaughn)
12253 Stonehouse Mountain Road
Culpeper, Virginia 22701

       Plaintiff

v.                                       Case No. 2006-L-64

*Served in person 2-15-06*

FRANK T. DOMBROWSKI,
117 East Culpeper Street
Culpeper, Virginia 22701

Filed in Culpeper County
Circuit Court Clerk's
Office 2-15, 2006
_____, DEPUTY
_____, CLERK

       Defendant

<u>COMPLAINT FOR JUDGMENT</u>

COMES NOW Plaintiff Melody L. Frazier, by counsel, and respectfully states as follows:

1. On or about March 11, 2004, Plaintiff sold to Defendant certain assets pertaining to a pet store located in Culpeper, Virginia, known as "Pet World." A copy of the Bill of Sale and Purchase Agreement pertaining to this transaction and executed by Plaintiff and Defendant is attached to this pleading, is marked as <u>Exhibit 1</u>, and is hereby incorporated by reference herein.

2. As set forth in <u>Exhibit 1</u>, the consideration paid by Defendant for the assets purchased was a promissory note dated March 15, 2004 for the amount of $78,000.00, plus interest at the rate of eight percent (8%) <u>per annum</u>, which constituted the entire purchase price for the assets purchased by Defendant and described in <u>Exhibit 1</u>. A copy of the promissory note executed by Defendant is attached to this pleading, is marked as <u>Exhibit 2</u>, and is hereby incorporated by reference.

3. As set forth in <u>Exhibit 2</u>, Defendant was to make monthly payments to Plaintiff in the amount of $652.42 beginning on April 15, 2004, with the entire


EXHIBIT A

unpaid principal and any accrued but unpaid interest to be paid in full on September 15, 2004.

4. As set forth in Exhibit 2, Defendant waived presentment, protest and notice. Further, Defendant likewise waived the benefit of the homestead exemption. Finally, in the event of default, Defendant agreed to pay the costs of collection including, but not limited to, an attorney's fee equal to twenty percent (20%) of the principal of the promissory note.

5. On or about March 15, 2004, Defendant executed a UCC Financing Statement to perfect Plaintiff's security interest in goods described in an "Exhibit A" attached to the Financing Statement. A copy of the UCC Financing Statement executed by Dombrowski is attached to this pleading, is marked as Exhibit 3, and is hereby incorporated by reference herein.

6. On or about June 29, 2005, Defendant executed a Modification Agreement to Exhibit 2 which modified the terms of the Promissory Note to increase the interest rate to 9.5% per annum beginning July 1, 2005 and 11% per annum beginning October 2, 2005 and to make the Promissory Note payable on demand. In addition, Defendant also modified the first lien security interest to Plaintiff to include all inventory and equipment at Defendant's business known as "Frank's Pet World." A copy of the Modification Agreement executed by Defendant is attached to this pleading, is marked as Exhibit 4, and is hereby incorporated by reference.

7. On or about June 29, 2005, Defendant executed a Security Agreement in favor of Plaintiff giving Plaintiff a security interest in collateral described in an "Exhibit A" to secure Defendant's obligations under the Promissory Note and Modification Agreement. A copy of the Security Agreement is attached to this pleading, is marked as Exhibit 5, and is hereby incorporated by reference herein.

8. According to Paragraph (7) of Exhibit 5, Defendant agreed to keep the collateral securing his debt to Plaintiff adequately insured for the benefit of Plaintiff in an amount not less than the unpaid balance on the Promissory Note. Further, Paragraph (7) of Exhibit 5 expressly states, "The proceeds of any insurance on the goods (whether paid by reason of loss, damage, return of premium or otherwise) shall, to the extent required by the Secured Party, be applied to the amount owed under or secured by this agreement."

9. On or about January 18, 2006, a fire destroyed the contents of Defendant's business, including those items used as collateral securing the debt owed to Plaintiff.

10. Upon Plaintiff's reasonable information and belief, Defendant maintained an insurance policy on the contents of his business, and such policy was issued

2

by The Cincinnati Insurance Company, a Ohio corporation authorized to conduct business in Virginia as a foreign corporation (hereinafter "Cincinnati Insurance"). In reliance on the Security Agreement, Plaintiff believed that Defendant had named her as an insured on his policy with Cincinnati Insurance.

11. However, upon Plaintiff's reasonable information and belief, without the knowledge of Plaintiff, and in breach of his obligations to Plaintiff set forth in Exhibit 5, Defendant failed to name Plaintiff as an insured on his policy with Cincinnati Insurance. In addition, upon reasonable information and belief, the amount of coverage under Defendant's insurance policy was less than the unpaid balance on the Promissory Note (as modified by the Modification Agreement), thereby constituting an additional breach of the Security Agreement set forth in Exhibit 5.

12. According to Paragraph (7) of Exhibit 5, "If Debtor defaults in performing any of the terms, conditions, provisions, or covenants of this agreement, the entire unpaid balance shall be immediately due and payable, at the option, at the option of Secured Party or assigns, without notice or demand." Further, the Security Agreement also states that in the event that Plaintiff employs an attorney to collect the unpaid balance due, Plaintiff is entitled to attorney's fees from Defendant equal to 15% of the unpaid balance due and owing.

13. Defendant is in default under the terms of the Security Agreement attached as Exhibit 5. As a result, Plaintiff is entitled to judgment for the following amounts as of February 15, 2006: (i) unpaid principal balance in the amount of $75,774.51; (ii) interest at the contract rate of eleven percent (11%) as set forth in the Modification Agreement at Exhibit 4 from February 15, 2006 and continuing until the debt is paid in full; (iii) attorney's fees in the amount of $11,366.18; plus (iv) costs. Further, because Defendant did not increase the amount of his monthly payment to coincide with the increase in interest rates set forth in Exhibit 4, the unpaid principal balance continues to increase, rather than decrease, over time.

14. At this time, Plaintiff does not believe that Defendant has yet received the insurance proceeds from Cincinnati Insurance. However, if Defendant has received or will receive these insurance proceeds and is allowed to dispose of such proceeds, the result would be to allow a fraud against Plaintiff and would result in an injustice to Plaintiff. Therefore, based upon the circumstances set forth above, this Court should impose a constructive trust upon Defendant's insurance proceeds for the benefit of Plaintiff.

WHEREFORE, for the reasons set forth above, Plaintiff Melody L. Frazier (formerly Melody L. Vaughn) prays that this Honorable Court grant her judgment against Defendant Frank T. Dombrowski for the following amounts: (i) unpaid principal balance in the amount of $75,774.51 (as of February 15, 2006); (ii) interest at the contract

3

rate of eleven percent (11%) as set forth in the Modification Agreement at <u>Exhibit 4</u> from February 15, 2006 and continuing until the debt is paid in full; (iii) attorney's fees in the amount of $11,366.18; plus (iv) Plaintiff's costs associated with this proceeding. In addition, Plaintiff respectfully prays that this Court place a constructive trust upon any insurance proceeds received by Defendant from Cincinnati Insurance or any other insurance company resulting from the loss or destruction of all equipment and inventory used by Defendant in the conduct of his business, and for such other relief as this Court may deem to be appropriate.

                                            MELODY L. FRAZIER
                                            (formerly Melody L. Vaughn)

                                            By: _____
                                                     Of Counsel

_____
Joseph F. Silek, Jr., Esq.
VSB No. 27403
Robert J. Light, Esq.
VSB No. 43553
Lawson & Silek, PLC
Counsel for Plaintiff
43 Chester Street
P.O. Box 602
Front Royal, Virginia 22630
Telephone: (540) 635-9415
Fax: (540) 635-9421

# BILL OF SALE
## AND PURCHASE AGREEMENT

**MELODY LOU VAUGHN**, hereinafter referred to as "Seller," of Culpeper County, Virginia, in consideration of SEVENTY-EIGHT THOUSAND AND NO/100THS DOLLARS ($78,000.00), paid to her by **FRANK THOMAS DOMBROWSKI**, hereinafter referred to as "Buyer" in the form of a Promissory Note, receipt of which is hereby acknowledged, does grant, sell, transfer, and deliver to Buyer the following goods: All of the inventory of Pet World, a pet store located in Culpeper, Virginia, except the following:

1. A scarlet macaw
2. 2 African gray parrots
3. 1 double yellow-headed Amazon parrot
4. 1 blue crown conure
5. the computer equipment presently located on the property
6. Seller's personal effects

The Promissory Note is secured by collateral described in a UCC Financing Statement and as further described on a computer disk provided Seller by Buyer.

Buyer shall have all rights and title to the above inventory in and for himself and his executors, administrators, and assigns.

By their signatures below, the parties further agree as follows:

1. Seller is the lawful owner of the inventory, and the inventory is free from all encumbrances.

2. Seller will continue business as usual until March 14, 2004, and Seller and Buyer acknowledge that said inventory is conveyed "as is" and that no warranty of any type accompanies this Bill of Sale.

3. Seller agrees to provide Buyer with a new computer not to exceed

S. CRISLER LINDSAY
ATTORNEY AT LAW

63 MADISON ROAD, SUITE 200
CULPEPER, VIRGINIA 22701

TELEPHONE (540) 825-8500
FACSIMILE (540) 825-0540

**EXHIBIT** 1

$500.00 in cost.

4. Buyer will permit Ronald K. Frazier to remain in his present location (approximately 8 ft x 8 ft) in Pet World.

5. Seller conveys any right, title, or interest she may have in the lease to the real property rented by Seller for Pet World.

In witness whereof, the parties have executed this Agreement in Culpeper County, Virginia on March 11, 2004.

_Melody Lou Vaughn_
MELODY LOU VAUGHN, SELLER

_[signature]_
FRANK THOMAS DOMBROWSKI, BUYER

S. CRISLER LINDSAY
ATTORNEY AT LAW

83 MADISON ROAD, SUITE 206
CULPEPER, VIRGINIA 22701

TELEPHONE (540) 825-0500
FACSIMILE (540) 825-0540

## PROMISSORY NOTE

$78,000.00                                       March 15, 2004
                                                 Executed in: Culpeper, Virginia

     **FOR VALUE RECEIVED**, the undersigned hereby promise to pay to the order of MELODY LOU VAUGHN, 12253 Stonehouse Mountain Road, Culpeper, Virginia 22701 or at such other place as the holder of this Note may hereinafter designate in writing, in lawful money of the United States of America, the principal sum of *SEVENTY-EIGHT THOUSAND AND NO/100 DOLLARS* ($78,000.00), payable in monthly installments of SIX HUNDRED FIFTY-TWO AND 42/100THS DOLLARS ($652.42) at the rate of eight percent (8%) per annum, each payment being due and payable on the 15th day of each month, beginning April 15, 2004, and continuing on the same day of each month until September 15, 2004, when the entire principal balance and any accrued but unpaid interest will be due and payable in full.

     Makers hereof shall incur and make a late fee payment of $100.00 to Noteholder for any payment of principal or interest not received by the noteholder within five (5) days of its due date plus an additional ten dollars ($10.00) per day thereafter until paid in full. Additionally, if default is made in any of the payments obligated to be made by this Note, the entire principal sum shall at once become due and payable without notice at the option of the holder of this note. Failure to exercise the option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

     This Note may be automatically renewed at the option of the maker hereof for an additional six (6) months if the maker of the Note has made all payments in a timely manner, is not in default on September 15, 2004, and has averaged monthly gross receipts of $18,500.00 or more for the period March 15, 2004, through September 15, 2004.

     Presentment, protest, and notice are hereby waived. The makers of this Note also waive benefit of the homestead exception as to this debt and agree in the event of default to pay attorney's fee of twenty percent (20%) of the principal hereof for cost of collection on the unpaid balance of this Note and all cost thereto.

WITNESS the following signature(s) and seal(s)

_____ (SEAL)
FRANK THOMAS DOMBROWSKI

**FILE**

EXHIBIT
2

STATE OF VIRGINIA,
COUNTY OF CULPEPER, to-wit:

Subscribed, sworn to and acknowledged before me this 15th day of March, 2004 by Frank Thomas Dombrowski.

_____
Notary Public

My commission expires: 8/31/04

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
(540) 825-9500

**B. SEND ACKNOWLEDGMENT TO: (Name and Address)**

S. Crisler Lindsay
763 Madison Road
Suite 206
Culpeper, VA   22701

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| Dombrowski | Frank | Thomas | | |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 206 Great Run Lane | Radiant | VA | 22732 | USA |
| 1d. TAX ID #: SSN OR EIN: 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 | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |
| Vaughn | Melody | Lou | | |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 12253 Stonehouse Mountain Road | CULPEPER | VA | 22701 | |

**4. This FINANCING STATEMENT covers the following collateral:**

See Exhibit A attached hereto and made a part hereof.

[Signature]

**EXHIBIT 3**

**5. ALTERNATIVE DESIGNATION (if applicable):** ☐ LESSEE/LESSOR ☐ CONSIGNEE/CONSIGNOR ☐ BAILEE/BAILOR ☐ SELLER/BUYER ☐ AG. LIEN ☐ NON-UCC FILING
**6.** ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   (if applicable) | **7.** Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] (optional)  ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2
**8. OPTIONAL FILER REFERENCE DATA**

Bankers Systems, Inc., St. Cloud, MN  Form UCC-1-LAZ 5/30/2001
ACKNOWLEDGMENT COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

EXHIBIT A

# COLLATERAL

45 AQUARIUM SET-UPS (HEATERS, GRAVEL, FILTERS, RACKS, LIGHTS, FISH) TO BE SET –UP IN STORE, FISH FOR RESALE          $5000

42 IMPORTED JAPANESE KOI (SIZE RANGE FROM 6" TO 30") ABOUT HALF FOR RESALE AND HALF FOR DISPLAY IN STORE POND          $30,000

## BIRDS

BREEDERS, OFFSPRING TO BE USED FOR SALE IN STORE

| | |
|---|---|
| 1 PAIR OF TRITON COCKATOOS | $3000 |
| 1 PAIR OF UMBRELLA COCKATOOS | $1800 |
| 1 PAIR OF MOLUCCAN COCKATOOS | $2500 |
| 1 PAIR OF MILITARY MACAWS | $1500 |
| 1 PAIR OF AFRICAN GRAYS | $2000 |
| 2 PAIRS OF GREENWING MACAWS | $6000 |
| 2 PAIRS OF BLUE& GOLD MACAWS | $4000 |

FOR RESALE
   6 SINGLE PARROTS          $4000

FOR DISPLAY
   1 TAME, TALKING, TRICK UMBRELLA COCKATOO          $2000

## TORTOISES

   1 PAIR OF BREEDING ALDABRAS          $28,000
   4 BREEDING FEMALES, 1 BREEDER MALE LEOPARD TORTOISES          $14,000

FOR RESALE
   ~~65 LEOPARD TORTOISE HATCHLINGS (@$150 EA.)~~
                                              ~~$9750~~

## MISC.

1 PAIR OF BREEDING RHINOCEROUS IGUANAS          $5000
1976 CUSTOM MADE SHOW HARLEY DAVIDSON          $13,000

TOTAL          ~~$131,550~~ $121,800

# MODIFICATION AGREEMENT

This Modification Agreement entered into this __29__ day of June, 2005, by and between Melody Lou Vaughn (now Frazier), note holder (referred to as Frazier) and Frank Thomas Dombrowski, maker (referred to as Dombrowski)

WHEREAS, Dombrowski endorsed that promissory note dated March 15, 2004 for $78,000.00 payable to Frazier and Dombrowski also executed a sales agreement and a UCC Financing Statement on the same date securing said note; and

WHEREAS, the parties have agreed to a modification of the said note and wish to include additional collateral to be secured hereby;

NOW THEREFORE in consideration of the mutual provision contained herein the parties do hereby agree as follows:

1) The interest rate will increase to 9 ½ % after June __30__, 2005 and to 11% after October 1, 2005.

2) The note will be payable on demand.

3) Dombrowski does hereby assign to Frazier a first security lien in all of the equipment and animals listed in the UCC Financing Statement dated March 15, 2004 and also assigns to Frazier a first security lien in all inventory and equipment currently located at Frank's Pet World including but not limited to cages, tanks, lights, security, racks, and filtration systems. Dombrowski will keep a minimum of $20,000.00 in inventory.

_Melody Lou Vaughn Frazier_ (SEAL)
Melody Lou Vaughn Frazier

_Frank Thomas Dombrowski_ (SEAL)
Frank Thomas Dombrowski

EXHIBIT
4

STATE OF VIRGINIA.

COUNTY OF CULPEPER, to wit:

Subscribed, sworn to and acknowledged before me this 29 day of June, 2005 by Melody Lou Vaughn Frazier.

_____(SEAL)
Notary Public

My Commission Expires: 11-2008

STATE OF VIRGINIA

COUNTY OF CULPEPER, to wit:

Subscribed, sworn to and acknowledged before me this 29 day of June, 2005 by Frank Thomas Dombrowski.

_____(SEAL)
Notary Public

My Commission Expies: 12/31/07

# CERTIFICATE

I, Pamela Jeanne St. Raymond Dombrowski, hereby certify, agree, and acknowledge that I have no right, title, or interest in the items shown as collateral on Exhibit A attached hereto.

                                                                             Pamela Jeanne St. Raymond Dombrowski

STATE OF VIRGINIA,

COUNTY OF CULPEPER to-wit:

       Subscribed, sworn to and acknowledged before me this 11th day of March, 2004, by Pamela Jeanne St. Raymond Dombrowski.

                                                                   Notary Public

My commission expires: 8/31/07

# SECURITY AGREEMENT

THIS AGREEMENT, made this ...29th... day of ...June... 19...2005

by and between ....Frank Thomas Dombrowski........................................

whose address is ..121 E. Culpeper St. Culpeper, VA. (368 Elizabeth St. Culpeper, VA).....
(Complete mailing address, including city or town and state)

in the ....County................................... of ........Culpeper, Virginia...............
(Show whether county or city)                    (Name of county or city)

(hereinafter called Debtor) and Melody Lou
                               ... Vaughn Frazier (hereinafter called Secured Party)

WITNESSETH that Debtor hereby grants to Secured Party, its successors and assigns a security interest in the property described below together with all other property now or hereafter affixed thereto or used in connection therewith and substitutions and replacements thereof (hereinafter collectively called the "Collateral") and in all proceeds thereof (but nothing herein shall be construed as consent or authorization by Secured Party to any sale or other disposition of any part thereof):

| Year | Make or Brand | Type or Style | Model | Identification No. | Other Description |
|---|---|---|---|---|---|
|  |  | SEE ATTACHED COLLATERAL LIST AND | | | |
|  |  | MODIFICATION AGREEMENT | | | |

as security for the payment of the sum of $ __78,000.00__ payable:

( ) in _____ consecutive monthly installments of $ _____ each, beginning on the _____ day of _____ 19_____
and continuing on the same day of each and every month thereafter (or, if any month does not contain such day, then on the last day of such month) until said amount and all interest thereon, if any shall have been fully paid, except that the last installment shall be equal to the balance then remaining unpaid, or

XX .AS. STATED. IN. THE. ORIGINAL NOTE DATED MARCH 15, 2004 AND AS AMENDED JUNE _____, 2005.

which debt is evidenced by and subject to the terms, covenants and conditions of a promissory note (hereinafter called the "Note") of even date herewith and also as security for all amounts herein agreed to be paid and all other indebtedness and obligations, absolute or contingent, present or future, matured or unmatured, of Debtor to Secured Party. (The indebtedness evidenced by the Note and all other indebtedness and obligations secured hereby are herein collectively called the "Obligations") Debtor shall have the right to the possession and use of the Collateral in any lawful manner not inconsistent with this agreement or any policy of insurance thereon until default hereunder.

Debtor represents, warrants and covenants that: (Check or fill in where applicable)

1. The Collateral will be used primarily
   ( ) for personal, family or household purposes;
   (XX) in the business of __FRANK'S PET WORLD__

2. The proceeds of the Note ( ) will not be used to acquire the Collateral (XX) will be used to acquire the Collateral and Secured Party may, at its option, disburse such proceeds directly to the seller of the Collateral and/or to the insurance agent or broker for insurance thereon.

3. The Collateral (XX) has not been and will not be attached to any real estate ( ) has been or will be attached to real estate described as _____
   (Street address or other description)
Located in the _____
   (show whether county or city)
Virginia, and the name(s) of the record owner(s) is (are) _____ of _____
                                                                  (Name of county or city)

4. If the Collateral will be used primarily and is of a type normally usable in more than one state (automotive equipment, road building equipment, construction or harvesting equipment, etc.) the CHIEF PLACE OF BUSINESS of Debtor is located at
..FRANK'S PET WORLD, CULPEPER, VA..................................................................
which address is in the _____
                        (show whether county or city)

5. The Collateral will be kept at __FRANK'S PET WORLD__ _____ (Name of county or city)
                                                         which address is in the __COUNTY__
of __CULPEPER__
   (Name of county or city)                                (Show whether county or city)

6. If the Collateral will be used primarily in a business or professional (other than equipment used in farming operations,) Debtor has a place or places of business in
.............................................................................................
(List all counties and cities where a place of business is located)

7. Debtor will not remove the goods from any location where they are to be kept as specified above without prior written consent of Secured Party and Debtor will promptly notify Secured Party, in writing, of any change in the information given in any of the foregoing paragraphs numbered 1 through 6, inclusive, or any change in Debtor's address.

Debtor represents and warrants that (1) Debtor has or forthwith will acquire title to the Collateral free and clear of all liens and encumbrances (2) no financing statement covering any of the Collateral is on file in any public office (3) if Debtor is a corporation, the certificate of incorporation does not prohibit the security interest granted herein and the execution of this agreement will not violate any law or any agreement to which it is a party.

If Debtor defaults in performing any of the terms, conditions, provisions or covenants of this agreement, the entire unpaid balance shall become immediately due and payable, at the option of Secured Party or assigns, without notice or demand.

Each installment not paid promptly when due shall bear interest at the rate of six per cent per annum from the due date until paid, which interest Debtor covenants and agrees to pay on demand.

The security interest herein granted to Secured Party, or its assigns shall continue until and terminate when all amounts due hereunder or secured hereby have been fully paid and the terms and conditions herein contained are fully performed by Debtor.

Debtor agrees that any equipment, repairs or accessories placed upon the goods shall be at Debtor's expense and become a component part of the goods and included in the terms of this agreement, and Debtor further agrees that the loss, injury or destruction of said goods shall not release Debtor from the payment of the Obligations.

**EXHIBIT 5**

Document   Page 15 of 17
Received Fax :    Feb 08 2006 11:56AM    Fax Station :   HP LASERJET FAX    p. 2
FEB-8-2006  12:55  FROM:FRAZIER    5408255532    TO:154063594    P.2

## SECURITY AGREEMENT (Continued)

Debtor agrees, so long as any amount remains unpaid hereunder, (a) to keep the goods free of all liens, (b) to pay all taxes, license fees and charges against the goods, (c) to keep and maintain the goods in good order and repair (d) to notify Secured Party or assigns promptly of any loss of or damage to the goods, (e) not to abandon misuse or abuse the goods (f) not to use the goods for any unlawful purpose or in violation of any law, (g) not to sell, assign, encumber, lend or otherwise dispose of or lose possession of the goods and unless such intended use is indicated in this agreement, not to permit any of the goods to be affixed to any real estate or let the goods to others or use the goods for hire without the prior consent of the Secured Party and also agrees that no part of the goods, other than motor vehicles will at any time be taken out of the State of Virginia without the prior written consent of Secured Party and that no motor vehicle will be taken out of said state except for ordinary travel and promptly return to said state and that no such motor vehicle shall be licensed or titled in any other state.

Debtor agrees to keep the goods adequately insured, for the benefit of Secured Party, against such risks as Secured Party may require (in the case of motor vehicles, such insurance shall cover loss by fire, theft, collision and the hazards covered by the standard comprehensive coverage policy), in an amount not less than the unpaid balance hereunder. The proceeds of any insurance on the goods (whether paid by reason of loss, damage, return of premium or otherwise) shall, to the extent required by Secured Party, be applied to the amount owed under or secured by this agreement. If Debtor fails to procure and maintain such insurance, in the amount required, in such form and with such insurer as may be approved by Secured Party then Secured Party shall have no obligation to procure any such insurance and Secured such insurer as Secured Party deems advisable (but Secured Party shall have no obligation to procure any such insurance and Secured Party's rights under this agreement shall not be prejudiced if it does not do so) and Debtor shall reimburse Secured Party for the actual cost of any such insurance together with interest at the rate of six per cent (6%) per annum, such reimbursement to be made, at Secured Party's discretion, upon demand or in installments over the remaining term of this agreement, the amount of such reimbursement to be secured by the security interest herein granted in the goods and to be treated and considered for all purposes as an additional amount owed to Secured Party for said goods.

TIME IS OF THE ESSENCE of this agreement. In the event (a) of any default by Debtor under this agreement or under any note evidencing the unpaid balance hereunder, (b) any person liable hereon in any capacity shall die or be or become insolvent or make an assignment for the benefit of Creditors, (c) a petition is filed or any other proceeding is commenced under the Federal Bankruptcy Act or any state insolvency statute by or against any person liable hereon, or (d) a receiver is appointed for, or a writ or order of attachment, levy or garnishment is issued against, any person liable hereon or the property, assets or income of any of them, all amounts owed hereunder shall become immediately due and payable in full, at the option of Secured Party, without any notice or demand, and in any such event, Debtor shall, on demand by Secured Party, forthwith deliver the goods to Secured Party in as good condition as when received by Debtor, ordinary wear and tear excepted (should Debtor fail or refuse, upon such demand, to deliver the goods as aforesaid to Secured Party, Debtor agrees that Secured Party shall have the right, without any further notice or demand, and with or without process of law, forthwith to take possession of the goods, wherever found; and for such purpose Debtor hereby authorizes Secured Party to enter upon or into any premises of Debtor with or without force or process of law, and forthwith to take possession of the goods) and Secured Party may sell such goods or any part thereof or otherwise enforce its security, interest, upon such terms, and in such manner, with or without notice or advertisement of such sale, as Secured Party may deem expedient, or as may be provided by law, at which sale Secured Party shall have the right to become the buyer, free of any right of redemption by Debtor. Debtor hereby expressly waives any right of action founded in court, contract or otherwise which the Debtor might have in the future against the Secured Party or assigns arising out of the removal, repossession, retention, sale or other disposition of the goods or arising out of any action or proceeding taken against Debtor on account of any default by the Debtor under this agreement.

Secured Party, at its option, may by collection, suit or otherwise, enforce payment of all amounts due hereunder or secured hereby and no suits or legal proceedings with respect thereto shall be deemed a waiver of any right of Secured Party to take possession of the goods as aforesaid or to otherwise enforce its rights hereunder. If Secured Party shall take possession of the goods and upon a sale thereof the proceeds are insufficient to cover the unpaid balance due hereunder, together with the expenses connected with such repossession and sale, including all expenses of removal, repairs, storage, liens, agent's commissions, attorney's fees, and sale and delivery charges, Debtor agrees to pay any deficiency that may result. Any amount derived from any such sale in excess of the amount necessary to cover such items shall be paid to Debtor.

In the event Debtor is in default under this agreement, Secured Party may employ an attorney to collect any unpaid balance due under this agreement, or otherwise enforce the rights of Secured Party hereunder by legal proceedings or otherwise, and Debtor agrees to pay an attorney's fee not exceeding 15% of the unpaid balance owing hereunder, if incurred.

The waiver or indulgence of any default by Secured Party shall not operate as a waiver of any subsequent default.

Any provisions or conditions herein contrary to the law of the State in which this agreement is made shall not invalidate any other part of this agreement.

In the event of any default hereunder by Debtor, then Secured Party may, at its option, in addition to any other remedy, take whatever action Secured Party deems advisable to remedy such default and if in taking such action Secured Party expends any money to protect the property or protect and preserve the security interest therein (including, but not limited to, payments for insurance premiums, repairs, storage, transportation, removal of liens, etc.) the amount of such expenditures shall become due and payable from Debtor to Secured Party, with interest at the rate of six per cent (6%) per annum, upon demand, or as Secured Party's discretion, in installments over the remaining term of this agreement, and the amount of such expenditures shall be secured by the security interest hereby granted in the goods and be treated and considered for all purposes as an additional amount owed to Secured Party for said goods.

Debtor agrees to execute, at the request of Secured Party or assigns, any instrument required or permitted by the law to be filed or recorded to perfect and continue perfection of said security interest and agrees that any such instrument and any instrument which may be required or permitted in order to release or terminate such security interest shall be prepared and filed at the expense of Debtor.

If in exercising any right hereunder or in any other circumstances connected herewith, Secured Party is required or permitted or desires to give any notice to Debtor, such notice may be given by ordinary, registered or certified mail, addressed to Debtor at the Debtor's address shown at the beginning of this agreement or such other address as Debtor may have furnished to Secured Party for such notice, and shall be deemed given if and when so mailed, and five days' notice of any proposed action shall be deemed reasonable and sufficient notice for all purposes.

This agreement and all of its provisions shall inure to the benefit of and be binding upon the parties hereto, their heirs, personal representatives, successors and assigns. Debtor hereby waives the benefit of the homestead exemption as to all sums payable hereunder.

No sale or assignment of this agreement shall in any manner operate to release, terminate or otherwise affect said security interest in the goods before the payment in full of all amounts due hereunder. Debtor hereby waives notice of any such sale or assignment of this agreement. All rights of Secured Party under this agreement shall immediately pass to and be vested in the assignee upon any assignment of this agreement.

THIS AGREEMENT CONSTITUTES THE ENTIRE CONTRACT BETWEEN THE PARTIES AND NO WAIVER OR MODIFICATION OF ANY OF ITS TERMS OR CONDITIONS SHALL BE VALID, UNLESS WRITTEN UPON OR ATTACHED TO THIS AGREEMENT AND SEPARATELY SIGNED BY THE PARTIES.

This agreement shall be valid and binding upon Debtor and Debtor's successors and assigns, whether or not signed by Secured Party.

WITNESS the following signatures and seals:

_____(SEAL)
Debtor

_____(SEAL)
Debtor

By:_____
(Title)

THE SECOND NATIONAL BANK

Melody U. Frazier

_____ Va.

By:_____
(To be signed by Bank if Agreement to be filed)

(Corporate Seal)

EXHIBIT A

# COLLATERAL

    45 AQUARIUM SET-UPS (HEATERS, GRAVEL, FILTERS, RACKS, LIGHTS, FISH) TO BE SET –UP IN STORE, FISH FOR RESALE                  $5000

    42 IMPORTED JAPANESE KOI (SIZE RANGE FROM 6" TO 30") ABOUT HALF FOR RESALE AND HALF FOR DISPLAY IN STORE POND                $30,000

## BIRDS

    BREEDERS, OFFSPRING TO BE USED FOR SALE IN STORE

| | |
|---|---|
| 1 PAIR OF TRITON COCKATOOS | $3000 |
| 1 PAIR OF UMBRELLA COCKATOOS | $1800 |
| 1 PAIR OF MOLUCCAN COCKATOOS | $2500 |
| 1 PAIR OF MILITARY MACAWS | $1500 |
| 1 PAIR OF AFRICAN GRAYS | $2000 |
| 2 PAIRS OF GREENWING MACAWS | $6000 |
| 2 PAIRS OF BLUE& GOLD MACAWS | $4000 |

FOR RESALE
    6 SINGLE PARROTS                $4000

FOR DISPLAY
    1 TAME, TALKING, TRICK UMBRELLA COCKATOO                $2000

## TORTOISES

    1 PAIR OF BREEDING ALDABRAS      $28,000
    4 BREEDING FEMALES, 1 BREEDER MALE LEOPARD TORTOISES                $14,000

    FOR RESALE
    ~~65 LEOPARD TORTOISE HATCHLINGS (@$150 EA.)~~ *[struck through, initialed]*
               ~~$9750~~

## MISC.

    1 PAIR OF BREEDING RHINOCEROUS IGUANAS                $5000

    1976 CUSTOM MADE SHOW HARLEY DAVIDSON                $13,000

         **TOTAL**                ~~$131,550~~ $121,800 *[handwritten, initialed]*

**COVER SHEET FOR FILING CIVIL ACTIONS**
COMMONWEALTH OF VIRGINIA

Case No. ............................................
(CLERK'S OFFICE USE ONLY)*

Culpeper County ........................................................... Circuit Court

Melody L. Frazier                                    v./In re:    Frank T. Dombrowski
................................................................                         ...................................................................
              PLAINTIFF(S)                                                              DEFENDANT(S)
12253 Stonehouse Mountain Road                                117 East Culpeper Street
Culpeper, VA 22701                                            Culpeper, VA 22701

I, the undersigned [ ] plaintiff [X] attorney for plaintiff hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

| | | |
|---|---|---|
| [ ] Accounting | [X] Contract Action | [ ] Landlord/Tenant |
| [ ] Administrative Appeal | [ ] Contract Specific Performance | [ ] Mechanics Lien |
| [ ] Adult Protection | [ ] Correct/Erroneous State/Local Taxes | [ ] Medical Malpractice |
| [ ] Aid and Guidance | [ ] Counterclaim | [ ] Motor Vehicle Tort |
| [ ] Annexation | [ ] Court Appointment of Guardian (Competency) | [ ] Name Change |
| [ ] Annulment | [ ] Cross Claim | [ ] Order to Sever |
| [ ] Appeal Decision of ABC Board | [ ] Custody/Visitation/Support/ Equitable Distribution | [ ] Partition |
| [ ] Appeal Decision of Board of Zoning | [ ] Declaratory Judgment | [ ] Petition |
| [ ] Appeal Decision of Comp Board | [ ] Declare Death | [ ] Product Liability |
| [ ] Appeal Decision of Employment Commission | [ ] Delinquent Taxes | [ ] Quiet Title |
| [ ] Appeal Decision of Local Government | [ ] Detinue | [ ] Referendum Elections |
| [ ] Appeal Decision of Marine Resources Commission | [ ] Divorce | [ ] Reformation of Trust |
| [ ] Appeal Decision of Voter Registration | [ ] Ejectment | [ ] Reinstatement of Driving Privileges |
| [ ] Appointment of Church Trustee, Substitute Fiduciaries | [ ] Encumber/Sell Real Estate | [ ] Reinstatement (General) |
| [ ] Approval of Right to be Eligible to Vote | [ ] Enforce Vendor's Lien | [ ] Removal |
| [ ] Asbestos Litigation | [ ] Escheat | [ ] Separate Maintenance |
| [ ] Attachment | [ ] Establish Boundaries | [ ] Standby Guardian/ Conservator |
| [ ] Bond Forfeiture Appeal | [ ] Expunge | [ ] Termination of Mineral Rights |
| [ ] Child Abuse and Neglect - Unfounded Complaint | [ ] Forfeiture of U.S. Currency | [ ] Unlawful Detainer |
| [ ] Civil Contempt | [ ] Freedom of Information | [ ] Vehicle Confiscation |
| [ ] Claim Impleading Third Party Defendant | [ ] Garnishment | [ ] Will Contested |
| [ ] Complaint - (Miscellaneous) | [ ] General Tort Liability (other than motor vehicle) | [ ] Writ of Certiorari |
| [ ] Compromise Settlement | [ ] Grievance Procedures | [ ] Writ of Habeas Corpus |
| [ ] Condemnation | [ ] Guardian Appointment | [ ] Writ of Mandamus |
| [ ] Confessed Judgment | [ ] Impress/Declare a Trust | [ ] Writ of Prohibition |
| [ ] Concealed Handgun Permit Denial | [ ] Injunction | [ ] Writ of Quo Warranto |
| [ ] Conservator of Peace | [ ] Interdiction | [ ] Wrongful Death |
| [ ] Construe Will | [ ] Interrogatory | [ ] Other .................................... |
| | [ ] Intentional Tort | |
| | [ ] Judgment Lien-Bill to Enforce | |
| | [ ] Judicial Review | |

[ ] Damages in the amount of $ 75,774.51, plus interest, costs and attorney's fees. are claimed.

2/10/06
..................
DATE              [ ] PLAINTIFF    [ ] DEFENDANT    [X] ATTORNEY FOR [X] PLAINTIFF
                                                                     [ ] DEFENDANT

Robert J. Light, 43 Chester Street, Front Royal, VA 22630
540-635-9415
PRINT NAME

ADDRESS/TELEPHONE NUMBER OF SIGNATOR

FORM CC-1416 (MASTER) PAGE ONE 1/06                * See reverse side for Civil Action Type Codes
                                                     - for Clerk's Office Use Only