# PROMISSORY NOTE

December 1, 2006                                                                                              $6,500.00
Culpeper, Virginia

      FOR VALUE RECEIVED, Frank T. Dombrowski, (the "Borrower"), promises to pay to the order of Melody L. Frazier ("Lender"), without offset, the principal amount of SIX THOUSAND FIVE HUNDRED AND 00/100 DOLLARS. All payments of principal and interest shall be made in lawful money of the United States in immediately available funds at 12253 Stonehouse Mountain Road, Culpeper, Virginia  22701 or at such other place as the Lender hereof may from time to time designate in writing.

      This Note shall bear interest from the date hereof on the unpaid principal amount at a rate per annum equal to 12.0%.  This Note is payable in twenty-four (24) monthly installments of principal and interest as set forth on **Exhibit A** which is attached hereto and made a part hereof. Each monthly installment of principal and interest is payable to the Lender on the first day of each month, beginning on January 1, 2007.  If not sooner paid, all principal and interest owing on this Note shall be due in full on December 1, 2008.

      Interest on this Note shall be computed on the basis of a year of 365 days (366 days in a leap year) and shall be paid for the actual number of days elapsed (including the first day but excluding the last day).

      If the Borrower fails to pay any monthly installment of principal or interest within five (5) days after its due date, the Borrower will pay to the Lender on demand a late charge in the amount of five percent (5%) of the overdue payment.

      If the Borrower makes a payment on this Note by means of a check that is later dishonored, for any reason, the Borrower will pay the Lender a fee in the amount of Fifty and 00/100 Dollars ($50.00).

      The Borrower hereby waives demand, presentment for payment, notice of dishonor, protest and notice of protest or lack of diligence in collection or in bringing suit.  The Borrower agrees to be bound for the payment hereof until the principal amount hereof and all accrued but unpaid interest hereon have been paid in full.

      If one or more of the following events ("Events of Default") shall have occurred:  (i) the Borrower shall fail to pay any of the principal of, or interest on, this Note or any other amount payable hereunder, as and when due; (ii) the Borrower shall commence a voluntary case or other proceeding seeking liquidation, reorganization, or other relief with respect to itself or its debts under any appointment of a trustee, receiver, liquidator, custodian, or other similar official of it or appointment of or taking possession by any such official in an involuntary case or other creditors, or shall fail generally to pay its debts as they become due; or (iii) an involuntary case or other proceeding shall be commenced against the Borrower seeking liquidation, reorganization, or other relief with respect to it or its debts under any appointment of a trustee,



receiver, liquidator, custodian, or other similar official of it or continue undismissed for a period of 60 days, or an order for relief shall be entered against the Borrower under the federal bankruptcy laws as now or hereafter in effect (iv) the Borrower shall default, beyond any applicable grace period, in the observance or performance of any covenant or agreement contained in any other agreement between the Borrower and the Lender relating to the loan evidenced by this Note; (v) the entry of a judgment against the Borrower or the making of any attachment, levy, or garnishment against the Borrower or the property of the Borrower; or (vi) the death of the Borrower; THEN, in any such case, the Lender at its option may, by notice to the Borrower, declare the unpaid principal amount of this Note, together with accrued interest thereon, to be, and this Note, together with accrued interest thereon, shall thereupon become immediately due and payable without presentment, demand, protest, or other notice of any kind, all of which are hereby waived by the Borrower. Failure to exercise any option available to the Lender upon an Event of Default by the Borrower shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

The Borrower may prepay this Note in whole or in part, without penalty, at any time and from time to time by paying the principal amount to be prepaid together with accrued interest thereon to the date of prepayment. Any prepayment of this Note shall be applied to the principal installments thereof in the inverse order of their maturities.

No failure or delay by the Lender in exercising any right, power, or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power, or privilege. The rights and remedies herein provided shall be cumulative and not exclusive of any rights or remedies provided by law.

This Note is secured pursuant to a Security Agreement, dated as of December 1, 2006 between the Borrower and the Lender.

This Note shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia. The Borrower agrees that any action to collect or enforce this Note or any part hereof may be instituted and maintained in a court having appropriate jurisdiction and located in the County of Culpeper, Virginia.

If this Note is collected through any attorney at law, or under the advice thereof, the Borrower agrees to pay all costs of collection including reasonable attorney's fees and expenses.

The Borrower hereby waives the benefit of the Homestead Exemption.

This Note and the Security Agreement constitute the entire agreement between the parties pertaining to the subject matter of this Note and supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions of the parties, whether oral or written. All exhibits attached to this Note and to the Security Agreement shall be deemed part of this Note and incorporated herein, where applicable, as if fully set forth herein. No amendment, supplement, modification, waiver, or termination of this Note shall be binding unless executed by all parties hereto, or in the case of a waiver, by the party for whom such benefit was intended.

IN WITNESS WHEREOF, the undersigned has signed and sealed this Note as of the day and year first above written and Frank T. Dombrowski has caused this Note to be executed in his name.

_____(SEAL)
FRANK T. DOMBROWSKI


COMMONWEALTH OF VIRGINIA
CITY/COUNTY _Culpeper_____, to wit:

The foregoing instrument was acknowledged before in the jurisdiction aforesaid this 22nd day of _December_____, 2006, by Frank T. Dombrowski.

My commission expires _August 31, 2009_.

_____
Notary Public

3

# SECURITY AGREEMENT

THIS SECURITY AGREEMENT is made as of December 1, 2006, between **FRANK T. DOMBROWSKI** (the "Borrower") and **MELODY L. FRAZIER** (the "Lender"):

## RECITALS

The Lender has made a loan (the "Loan") to the Borrower evidenced by a note of even date herewith from the Borrower to the Lender in the original principal amount of **SIX THOUSAND FIVE HUNDRED AND 001/00 DOLLARS ($6,500.00)** (the "Note"); and

The Lender is willing to make the Loan only upon the condition that the Borrower shall have executed this Security Agreement to secure its obligations under the Note.

## AGREEMENT

The Borrower and the Lender agree as follows:

### SECTION 1.
### Defined Terms.

The following terms shall have the following meanings, and terms defined above shall have the meanings there specified:

"Code" shall mean the Uniform Commercial Code as in effect from time to time in Virginia, provided that, if the validity or perfection of any security interest granted to the Lender hereunder is governed by the Uniform Commercial Code as in effect in any other jurisdiction, then as to the validity or perfection of such security interest, "Code" shall mean the Uniform Commercial Code as in effect in such other jurisdiction.

"Collateral" shall have the meaning assigned to it in Section 2 of this Security Agreement.

"Documents" shall mean any "document," as defined in section 9A-102 of the Code, now or hereafter owned or acquired by the Borrower and wherever located.

"Event of Default" shall have the meaning specified in the Note and shall have the meaning default as used in this Security Agreement.

"Instruments" shall mean any "instrument," as defined in section 9A-102 of the Code, now or hereafter owned or acquired by the Borrower and wherever located.

"Obligations" shall mean (i) all amounts owed by the Borrower to the Lender on the Note; (ii) all obligations and liabilities of the Borrower under, arising out of or in connection with this Security Agreement, whether for principal, interest, fees, expenses or otherwise; and

Page 1 of 9

(iii) all other obligations of the Borrower to the Lender, whether present, future, contingent or otherwise, including, without limitation, any future advances.

"Proceeds" shall mean any "proceeds," as defined in section 9A-102 of the Code.

"Security Agreement" shall mean this Security Agreement as the same may from time to time be amended or supplemented.

"Supporting Obligations" shall mean any "supporting obligation," as defined in section 9A-102 of the Code.

### SECTION 2.
### Grant of Security Interest.

As security for the prompt and complete payment and performance when due of all the Obligations and in order to induce the Lender to make the Loan, the Borrower hereby assigns, pledges and transfers to the Lender and hereby grants to the Lender a security interest in all the Borrower's right, title and interest in, to, and under the following collateral: a 1976 Harley-Davidson Motorcycle, Vehicle Identification No. 9D10982H6, including but not limited to any Proceeds therefrom ("Collateral").

### SECTION 3.
### Collection and Enforcement by the Lender.

In addition to, and without limiting, all other rights and remedies of the Lender under this Security Agreement and any other agreement relating to the Obligations, or under the Code or any other applicable law, the Lender shall have the right at any time to take any Proceeds to which the Lender is entitled under section 9A-315 of the Code.

### SECTION 4.
### Default.

Upon the occurrence of any Event of Default and/or event of default under this Security Agreement, the Borrower shall be in default hereunder and the Lender may:

(a)     at its option, declare the Obligations (or any part thereof) immediately due and payable, without notice or demand; and

(b)     at its option, exercise any of the rights and remedies afforded to it by this Security Agreement, by the Code, or by other provisions of applicable law.

### SECTION 5.
### Representations and Warranties.

The Borrower hereby represents and warrants that:

(a)     Binding Effect. This Security Agreement constitutes a valid obligation of the Borrower, legally binding upon it and enforceable in accordance with its terms. No consent of any other person is required in connection with the execution, delivery, performance, validity, or enforceability of this Security Agreement.

(b)     Contravention. The execution, delivery, and performance by the Borrower of this Security Agreement require no action by, filing with, or consent of any governmental authority or third party and do not contravene or constitute (with or without the giving of notice or lapse of time or both) a default under any provision of applicable law or of any agreement, judgment, injunction, order, decree, or other instrument binding upon or affecting the Borrower or result in the creation or imposition of any lien (other than the lien of this Security Agreement) upon any of the Borrower's assets.

(c)     Title to Collateral; Liens. Except for the security interest granted to the Lender pursuant to this Security Agreement, the Borrower is the sole owner of the Collateral, having good and marketable title thereto, free and clear of all liens, encumbrances, or rights of others. No security agreement, financing statement, equivalent security, or lien instrument or continuation statement governing any of the Collateral is on file or of record in any public office, except such as may have been filed by the Borrower in favor of the Lender pursuant to this Security Agreement.

(d)     Priority. This Security Agreement constitutes a second lien on the Collateral in favor of the Lender, prior to all other liens, encumbrances, or security interests, and is enforceable as such against creditors of and purchasers from (except to the extent that purchasers in the ordinary course of business do not take subject to a security interest, pursuant to applicable law) the Borrower. All action necessary or desirable to protect and perfect such security interest in the Collateral has been duly taken.

The foregoing representations and warranties of the Borrower contained in Paragraphs (a)-(d) shall survive the execution and delivery of this Security Agreement.

## SECTION 6.
### Covenants.

The Borrower covenants and agrees with the Lender that until the Obligations are fully satisfied:

(a)     Further Documentation and Action; Pledge of Instruments. The Borrower, at its expense, will execute such additional documents and take such further action as the Lender may from time to time require to obtain the full benefits of this Security Agreement, including, without limitation, causing the lien of the Lender in the Collateral which is subject to a certificate of title law to be duly noted on such certificate of title or to be otherwise filed in such manner as is prescribed by law in order to perfect such lien and causing all such certificates of title and evidences of lien to be deposited with the Lender; and executing and delivering to the Lender

additional security agreements or amendments to this Security Agreement in form and substance satisfactory to the Lender.

If any amount payable in connection with the Collateral shall be evidenced by a promissory note or other instrument, such note or other instrument shall be immediately pledged and delivered to the Lender hereunder, duly endorsed in a manner satisfactory to the Lender.

(b)     Compliance with Laws. The Borrower will comply, in all material respects, with all laws and regulations applicable to the Collateral except to the extent that the failure to comply would not have a material adverse impact on the financial or other condition of the Borrower.

(c)     Payment of Obligations. The Borrower will pay promptly when due all taxes and assessments imposed upon the Collateral or in respect of its income, as well as all claims of any kind (including claims for labor, materials, and supplies).

(d)     Compliance with Terms of Agreements. The Borrower will perform and comply in all material respects with all obligations under all other agreements to which it is a party or by which it is bound relating to the Collateral.

(e)     Limitation on Liens on Collateral. The Borrower will not sell, lease, assign, transfer, or otherwise dispose of the Collateral; will not create or permit any lien, security interest, or encumbrance on or in the Collateral (other than the security interest created hereunder); will take such action as is necessary to remove any lien, security interest, or encumbrance on or in the Collateral (other than the security interest created hereunder); and will defend the right, title, and interest of the Lender to the Borrower's rights in the Collateral against the claims and demands of third parties.

(f)     Maintenance of Insurance. The Borrower will maintain with a financially sound and reputable company an insurance policy insuring the Collateral against loss by fire, explosion, theft, and such other casualties as are usually insured against for this type of Collateral and insuring the Borrower and the Lender against liability for personal injury and property damage relating to the Collateral, such policies to be in such form and in such amounts and coverage as may be satisfactory to the Lender, with losses payable to the Lender as the primary beneficiary of the policy. The Borrower shall, if so requested by the Lender, deliver to the Lender as often as the Lender may reasonably request, a report of a reputable insurance broker with respect to the insurance on the Collateral. All insurance with respect to the Collateral shall (i) contain a breach of warranty clause in favor of the Lender; (ii) provide that no cancellation, reduction in amount, or change in coverage therefor shall be effective until at least ninety (90) days after receipt by the Lender of written notice thereof; (iii) provide that the Lender may, but shall not be obligated to, pay premiums in respect thereof; and (iv) be satisfactory in all respects to the Lender.

(g)     Limitations on Dispositions of the Collateral. The Borrower will not without the prior written consent of the Lender (which consent will not be unreasonably withheld) remove the Collateral from 12253 Stonehouse Mountain Road, Culpeper, Virginia 22701. The Borrower agrees that he shall have no right to remove the Collateral from the aforesaid premises

if the Borrower is in default or an Event of Default has occurred under this Security Agreement and/or the Note.

(h)   <u>Notices</u>.   The Borrower will advise the Lender promptly, in reasonable detail, (i) of any lien, encumbrance, or claim made against the Collateral; (ii) of any material change in the composition of the Collateral; and (iii) of the occurrence of any other event that would have a material effect on the aggregate value of the Collateral.

(i)   <u>Maintenance of Equipment</u>.   The Borrower will maintain the Collateral in good operating condition, ordinary wear and tear excepted, and the Borrower will provide all maintenance and service and all repairs necessary for such purpose.

(j)   <u>Payment for Preparation of Note and Security Agreement</u>.   The Borrower agrees to pay for the attorney's fees and costs related to the preparation of the Note and this Security Agreement.

The foregoing covenants of the Borrower contained in Paragraphs (a)-(j) shall survive the execution and delivery of this Security Agreement.

## SECTION 7.
### Attorney-in-Fact.

(a)   <u>Appointment</u>.   The Borrower hereby appoints the Lender, with full power of substitution, as its true and lawful attorney-in-fact with full authority in the place of the Borrower and in the name of the Borrower or in its own name, to take any action that may be necessary or desirable to accomplish the purposes of this Security Agreement, including without limitation, the following:

(i)   to pay or discharge taxes, liens, or other encumbrances on the Collateral, to effect any repairs or any insurance required by this Security Agreement and to pay the premiums therefor and the costs thereof; and

(ii)   upon the occurrence of any Event of Default, (A) to receive payment of all amounts due arising out of any Collateral; (B) to sign and endorse any invoices, freight or express bills, bills of lading, storage or warehouse receipts, drafts against debtors, assignments, verifications and notices in connection with documents relating to the Collateral; (C) to commence and prosecute any actions at law or in equity to collect the Collateral and to enforce any other right in respect of any Collateral; (D) to defend any action against the Borrower with respect to any Collateral; (E) to settle or compromise any action described above and, in connection therewith, to give such releases as the Lender may deem appropriate; and (F) generally to sell, transfer, pledge, make any agreement with respect to or otherwise deal with any of the Collateral as fully and completely as though the Lender were the absolute owner thereof for all purposes, and to take any action that the Lender deems necessary to protect or realize upon the Collateral and the Lender's security interest therein, in order to effect the intent of this Security Agreement, all as fully and effectively as the Borrower might do.

The Borrower hereby ratifies everything that such attorney shall lawfully do by virtue hereof. This power of attorney is a power coupled with an interest and shall be irrevocable.

(b)     No Duty.  The powers conferred on the Lender hereunder are solely to protect its interests in the Collateral and shall not impose any duty upon it to exercise any such powers. The Lender shall be accountable only for amounts that it actually receives as a result of the exercise of such powers and shall not be responsible to the Borrower for any act or failure to act, except for its own gross negligence or willful misconduct.

## SECTION 8.
### Performance by Lender of Borrower's Obligations.

If the Borrower fails to perform or comply with any of its agreements contained herein and the Lender itself, as provided for by the terms of this Security Agreement, performs or complies, the expenses of the Lender incurred in connection therewith shall be payable by the Borrower to the Lender on demand and shall constitute Obligations secured hereby.

## SECTION 9.
### Remedies; Rights Upon Default.

If the Borrower is in default hereunder:

(a)     Code Rights.  The Lender may exercise, in addition to all other rights and remedies granted to it in this Security Agreement and in any other agreement relating to the Obligations, all rights and remedies of a secured party under the Code. The Lender agrees that it will act in a commercially reasonable manner. Without limiting the generality of the foregoing, the Borrower expressly agrees that in any such event the Lender, without demand of performance or other demand, advertisement, or notice of any kind (except the notice specified below of the time and place of public or private sale) to the Borrower or any other person (all of which are hereby expressly waived), may collect and realize upon and take possession of the Collateral, or any part thereof, and/or may sell or otherwise dispose of the Collateral (or contract to do so), or any part thereof, in one or more parcels at public or private sale or sales, at any exchange broker's board or at any of the Lender's offices or elsewhere at such prices as it may deem best, for cash or on credit or for future delivery without assumption of any credit risk. The Lender shall have the right upon any such public sale or sales and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral, free of any right or equity of redemption in the Borrower. The Borrower agrees that the Lender shall have the right, with or without process of law, upon default hereunder, to enter upon or into any premises of the Borrower and take possession of the Collateral. The Borrower further agrees, at the Lender's request, to assemble the Collateral and make it available to the Lender, at places that the Lender shall reasonably select, whether at the Borrower's premises or elsewhere. The Lender shall retain the net proceeds of any such collection, realization, or sale, after deducting its reasonable expenses incurred therein, including reasonable attorney's fees, for application to the payment of the Obligations, in such order as the Lender may elect, the Borrower remaining liable

Case 07-61223   Doc 31-2   Filed 09/07/07   Entered 09/07/07 16:34:50   Desc Exhibit
            Exhibit B   Page 10 of 12

for any deficiency remaining unpaid after such application, and only after applying such net proceeds and after the payment by the Lender of any other amount required by any provision of law, including section 9A-608(a)(1)(C) of the Code, need the Lender account for the surplus, if any, to the Borrower. The Borrower agrees that the Lender need not give more than ten (10) days' notice (which notification shall be deemed given when mailed, postage prepaid, addressed to the Borrower at its address set forth in Section 12 hereof) of the time and place of any public sale or of the time after which a private sale may take place and that such notice is reasonable notification of such matters. The Borrower shall remain liable for any deficiency if the proceeds of any sale or disposition of the Collateral are insufficient to pay all amounts to which the Lender is entitled, the Borrower also being liable for the fees of any attorneys employed by the Lender to collect such deficiency.

(b) <u>Expenses</u>. The Borrower also agrees to pay all expenses of the Lender, including reasonable attorney's fees, incurred with respect to the collection of any of the Obligations and the enforcement of any of their respective rights hereunder.

(c) <u>Waivers</u>. The Borrower hereby waives presentment, demand, protest, or any notice (to the extent permitted by applicable law) of any kind in connection with this Security Agreement or any Collateral. The Borrower further waives any applicable homestead exemption in connection with this Security Agreement.

## SECTION 10.
### Limitation on Lender's Duty in Respect of Collateral.

Beyond the safe custody thereof, the Lender shall not have any duty as to the Collateral in its possession or control or in the possession or control of any agent or nominee of it or any income thereon or as to the preservation of rights against prior parties or any other rights pertaining thereto, except as provided by law. Any and all costs and expenses for the maintenance and repair of the Collateral shall be borne by the Borrower.

## SECTION 11.
### Further Indemnification.

The Borrower agrees to pay and to save the Lender harmless from any liabilities arising out of excise, sales, or other taxes payable with respect to the Collateral or in connection with any of the transactions contemplated by this Security Agreement. The Borrower further agrees to pay and to save the Lender harmless from any liabilities or damages, including damages to the Collateral, arising out of the Borrower's use of the Collateral.

## SECTION 12.
### Notices.

Notices to the Lender shall be sent to 12253 Stonehouse Mountain Road, Culpeper, Virginia 22701 and Joseph F. Silek, Esquire, Lawson & Silek P.L.C., 43 Chester Street, Front Royal, Virginia 22630, or to such other address as the Lender shall specify in writing. Notices to

the Borrower shall be sent to 206 Great Run Lane, Radiant, Virginia 22732 or to such other address as the Borrower shall specify in writing. Notices shall be in writing and shall be effective (a) if given by mail, three (3) days after deposited in the United States mail with first class postage prepaid or (b) if given in any other way, including facsimiles, when delivered.

## *SECTION 13.*
Severability.

Any provision of this Security Agreement that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

## *SECTION 14.*
No Waiver; Cumulative Remedies.

The Lender's failure to exercise or delay in exercising any right shall not operate as a waiver thereof, and any single or partial exercise of any right shall not preclude any other or future exercise thereof or the exercise of any other right. The rights and remedies provided are cumulative and may be exercised singly or concurrently and are not exclusive of any rights and remedies provided by law. None of the terms or provisions of this Security Agreement may be waived, altered, modified, or amended except by an instrument in writing, duly executed by the Lender and the Borrower.

## *SECTION 15.*
Successors and Assigns; Governing Law; Venue; Counterparts.

This Security Agreement shall be binding upon the successors and assigns of the Borrower and shall inure to the benefit of the Lender and its successors and assigns. This Security Agreement shall be governed by and be construed and interpreted in accordance with the laws of Commonwealth of Virginia, except to the extent that the law of other states governs the creation and perfection of security interests in collateral located in such states. The Borrower agrees that any action to collect or enforce this Security Agreement or any part hereof may be instituted and maintained in a court having appropriate jurisdiction and located in the County of Culpeper, Virginia. This Security Agreement may be executed in any number of separate counterparts and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

## *SECTION 16*
Entire Agreement

This Security Agreement and the Note constitute the entire agreement between the parties pertaining to the subject matter of this Security Agreement and supersede all prior and contemporaneous agreements, understandings, negotiations, and discussions of the parties,

whether oral or written. All exhibits attached to this Security Agreement and to the Note shall be deemed part of this Security Agreement and incorporated herein, where applicable, as if fully set forth herein. No amendment, supplement, modification, waiver, or termination of this Security Agreement shall be binding unless executed by all parties hereto, or in the case of a waiver, by the party for whom such benefit was intended.

**WITNESS** the following signature and seal.

_____ (Seal)
Frank T. Dombrowski

COMMONWEALTH OF VIRGINIA
CITY/COUNTY Culpeper_____, to wit:

The foregoing instrument was acknowledged before in the jurisdiction aforesaid this 22nd day of December, 2006, by Frank T. Dombrowski.

My commission expires August 31, 2009.

_____
Notary Public